**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 22-cr-15-APM** |
| | **:** | |
| **ELMER STEWART RHODES III,** | **:** | |
| **KELLY MEGGS,** | **:** | |
| **KENNETH HARRELSON,** | **:** | |
| **JESSICA WATKINS,** | **:** | |
| **ROBERTO MINUTA,** | **:** | |
| **JOSEPH HACKETT,** | **:** | |
| **DAVID MOERSCHEL,** | **:** | |
| **THOMAS CALDWELL, and** | **:** | |
| **EDWARD VALLEJO,** | **:** | |
| | **:** | |
| **Defendants.** | **:** | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT HARRELSON'S
MOTION TO SEVER TRIAL FROM _RHODES_ GROUP**

The defendant, Kenneth Harrelson moves the Court to sever him from the September trial

with Stewart Rhodes, Kelly Meggs, Jessica Watkins, and Thomas Caldwell.  ECF No. 259.

Harrelson claims he and his co-defendants have developed "antagonistic defenses" and, separately,

that there is no nexus connecting him to his co-defendants.  Neither of his arguments has merit,

and the Court should deny his motion.

**Legal Standard**

Federal Rule of Criminal Procedure 8 permits joinder of defendants who "are alleged to

have participated in the same act or transaction, or in the same series of acts or transactions,

constituting an offense or offenses."  Fed. R. Crim. P. 8(b); _see also United States v. Wilson_, 605

F.3d 985, 1015 (D.C. Cir. 2010).  "There is a preference in the federal system for joint trials of

defendants who are indicted together" because joint trials "promote efficiency and serve the

interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Id*. (quoting

*Zafiro v. United States*, 506 U.S. 534, 537 (1993)). "[T]his preference is 'especially strong' when

'the respective charges require presentation of much the same evidence, testimony of the same

witnesses, and involve two defendants who are charged, *inter alia*, with participating in the same

illegal acts.'" *Id*. (quoting *United States v. Ford*, 870 F.2d 729, 731 (DC. Cir. 1989)).

Courts, however, may grant relief to defendants in certain circumstances where they may

be prejudiced by joinder. *See* Fed. R. Crim. P. 14. Severance is only appropriate "if there is a

serious risk that a joint trial would compromise a specific trial right of one of the defendants, or

prevent the jury from making a reliable judgment about guilt or innocence." *Wilson*, 605 F.3d at

1016 (citing *Zafiro*, 506 U.S. at 539). "The defendant seeking severance under Rule 14 carried

the burden of demonstrating that failure to sever would result in prejudice." *United States v.*

*Gooch*, 665 F.3d 1318, 1336 (D.C. Cir. 2012).

### Argument

1. **Disagreements regarding stipulations do not constitute "mutually antagonistic defenses."**

Harrelson's primary argument is that he should be severed from his co-defendants, because

"Counsel cannot reconcile how a group of Defendants can be tried together with inconsistent and

incompatible positions on important issues like stipulating to or opposing the admissibility and

authentication of massive quantities of key evidence." ECF No. 259 at ¶ 9. His argument boils

down to this: "there just is not consensus among these Defendants on whether to stipulate to some

or all evidence." *Id*. at ¶ 10. This is not a mutually antagonistic defense.

"Mutually antagonistic defenses exist when the defense one defendant asserts is

irreconcilable with that asserted by another defendant." *Wilson*, 605 F.3d at 1016 (citing *United*

*States v. Gilliam*, 167 F.3d 628, 635 (D.C. Cir. 1999)). Harrelson's desire to "ensure and protect

the government's ability to present its entire case, and in reciprocal manner for Harrelson to make use of any relevant video recordings and evidence," ECF No. 259 at ¶ 11, is not a defense so much as a logistical strategy. In other words, Harrelson does not have a "trial right" to any specific number of stipulations or any reciprocal agreement with the government on how many videos and witnesses the parties present. *Zafiro*, 506 U.S. at 539. The government will ultimately present certain evidence through stipulations and other evidence through witnesses and exhibits, and Harrelson should propose stipulations for the government to assess on an individual basis. These logistical considerations are separate and apart from Harrelson's defense and whether that defense is truly irreconcilable with his co-defendants' defenses. His own arguments indicate as much, stating that he endeavors "to streamline the presentation to the jury," ECF No. 259 at ¶ 45, and concluding that defense disagreements regarding stipulations "will make a very significant difference in the *conduct* of the trial," ECF No. 259 at ¶ 41 (emphasis added). These considerations do not impact whether a jury will make a "reliable judgment on guilt or innocence." *Zafiro*, 506 U.S. at 539. Regardless, Harrelson has not explained why a limiting jury instruction would not sufficiently mitigate his concern. *Id.* (explaining that "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice") (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)). Falling short, Harrelson's primary basis for severance should be denied.

Harrelson's remaining points are too conclusory to revive his argument. He first argues that "Counsel for the Defendants are also of different litigation strategy views as to what points to lead with, emphasize, major on to best get the jury's attention and understanding." ECF No. 259 at ¶ 15. He later adds that "Harrelson's defense depends on other things with an entirely different theory that is incompatible with the other defendants at this time, under these circumstances on this compressed timeline." *Id.* at ¶ 31. Without more, the Court cannot assess whether any

disagreement in fact exists, let alone any prejudice.  Even assuming both are present, the law is

"well settled" that severance is not justified simply because defendants "may have a better chance

of acquittal in separate trials."  *Zafiro*, 506 U.S. at 540; *see also Wilson*, 605 F.3d at 1016 (requiring

"more than 'the presence of some hostility' among codefendants, and 'more than the fact that co-

defendants whose strategies were generally antagonistic were tried together'") (quoting *Gilliam*,

167 F.3d at 635).  Again, the defendant fails to explain why some remedy short of severance, such

as limiting instructions, would be insufficient.  Harrelson's residual arguments should be rejected.

> **2.  The indictment clearly presents a logical nexus among Harrelson and his co-defendants.**

Harrelson also argues that joinder is improper and will cause prejudice, because

"Harrelson's alleged actions were wholly separate and distinct from the joined co-Defendants."

ECF No. 259 at ¶ 25.  The "Court must sever the proceedings," Harrelson claims, "[u]nless the

Government demonstrates a logical nexus between Harrelson and his co-Defendants."  *Id*.  The

indictment does just that.

Harrelson, who shows up thirty-three times in a forty-four-page indictment, is alleged to

have conspired with his co-defendants to "oppose the lawful transfer of presidential power by

force."  ECF No. 167 at ¶ 16.  As early as November 9, 2020, Harrelson attended a private

GoToMeeting, titled "Oath Keepers National Call – Members Only," organized by Rhodes and

attended by Meggs and Watkins.  *Id*. at ¶ 19.  During the meeting, Rhodes is alleged to have

"outlined a plan to stop the lawful transfer of presidential power, including preparations for the

use of force, and urged those listening to participate."  *Id*.  Immediately after that meeting, Meggs

messaged Harrelson and others, "Anybody not on the call tonight.  We have been issued a call to

action for DC.  This is the moment we signed up for."  *Id*. at ¶ 20.  As of late December, Rhodes

continued "advocating for the use of force to stop the lawful transfer of presidential power" via

encrypted messages with Harrelson and Meggs in a shared group chat. *Id*. at ¶ 33. Starting on

December 30, 2020, Rhodes administered a group chat titled, "DC OP: Jan 6 21," that included

Meggs, Watkins, and others; on January 3, 2021, Meggs added Harrelson to the group chat and

designated him the "Ground Team lead." *Id* at ¶¶ 38, 54. At around this time, Harrelson and

Meggs served as the administrators of another encrypted group chat titled, "OK FL DC OP Jan 6."

*Id*. at ¶ 39. Also in late December, Caldwell "identified the Comfort Inn Ballston in Arlington,

Virginia, as the location that the [Quick Reaction Force ("QRF")] would use as its base of

operations for January 6, 2021." *Id*. at ¶ 45. Meggs paid for two rooms in that hotel. *Id*. Later,

after Harrelson and Meggs traveled from Florida to the Washington, D.C. area, Harrelson

messaged Meggs and others on January 5, asking for the location of the "QRF hotel," and Meggs

responded by requesting a private, direct message. *Id*. at ¶ 63. That day, Harrelson, Meggs,

Caldwell, and others dropped off "firearms, ammunition, and related items" at the QRF hotel, and

Meggs messaged Rhodes, "Yes we are just outside of town unloading at QRF on our way in." *Id*.

at ¶ 65, 69.

On the morning of January 6, 2021, Rhodes messaged Harrelson, Meggs, Watkins, and

others, "We will have several well equipped QRFs outside DC." *Id*. at ¶ 70. At around 1:30 p.m.,

after others had started surrounding the Capitol, Rhodes messaged, Harrelson, Meggs, Watkins,

and others, "Pence is doing nothing. As I predicted." Rhodes added, "All I see Trump doing is

complaining. I see no intent by him to do anything. So the patriots are taking into their own hands.

They've had enough." *Id* at ¶ 77. At 2:25 p.m., Rhodes messaged Harrelson, Meggs, Watkins,

and others, "Come to South Side of Capitol on steps" and included a picture showing his location

on the east side of the Capitol. *Id* at ¶ 89. At approximately 2:35 p.m., Harrelson, Meggs, Watkins,

and others marched in a stack formation up the east side Capitol steps and "pushed forward as part

of a mob that aggressively advanced toward the rotunda Doors, assaulted the law enforcement officers guarding the doors, threw objects and sprayed chemicals toward the officers and the doors, and pulled violently on the doors." *Id* at ¶ 95. Eventually, Harrelson, Meggs, Watkins, and others "forced their way through the doors into the Capitol" and further into the Rotunda before splitting up and heading toward the Senate (Watkins) and the House of Representatives (Harrelson and Meggs). *Id*. at ¶ 98, 100, 101, 103, 106. After exiting the Capitol, Harrelson gathered with Rhodes, Meggs, Watkins, and others. The next day, January 7, Harrelson, Meggs, and Caldwell, and others all collected their firearms and related gear from the QRF hotel.

Harrelson's arguments cannot withstand the weight of the indictment. His claim that they "fac[e] trial without a single, common thread tying all of the defendants together," ECF No. 259 at ¶ 19 (citing *Kotteakos v. United States*, 328 U.S. 750, 773 (1946)), ignores the indictment entirely. They are all identified as leaders of a conspiracy to oppose the transfer of presidential power by force, punctuated by the Court's pretrial detention rulings identifying them as such. Counter to Harrelson's claim that the indictment "majors on what unidentified, unspecified other people did like the crowd" and "suffers from mingling and confusing the actions of some Defendants unrelated to other Defendants," *id*. at ¶ 21, it details *Harrelson's and his co-defendants'* encrypted group chats, GoToMeetings, coordinated travel, actions at the QRF hotel, unlawful breach of the Capitol grounds and building, and actions afterward—all within a specified timeframe from November 2020 through January 2021. Consequently, Harrelson and his co-defendants are properly joined under Rule 8(b).

There is also no prejudice under Rule 14. There is no concern about great disparities in the weight and quantum of evidence, *id*. at ¶ 22 (citing *United States v. Sampol*, 636 F.2d 621, 642-48 (D.C. Cir. 1980), or relatedly that the jury will transfer guilt from one defendant to another without

assessing each defendant individually, *id*. at ¶ 23.  Harrelson's joinder with his co-defendants does

not preclude him from presenting arguments about his actions and intent to the jury, *id*. ¶¶ 26-30,

through his own case, cross-examination, closing arguments, or otherwise.  And, even if Harrelson

could point to a legitimate concern for prejudice, he again does not address why a limiting

instruction would be insufficient to mitigate that concern.  *Zafiro*, 506 U.S. at 540-41 (highlighting

instructions that "sufficed to cure any possibility of prejudice," including, that the government

"had the burden of proving beyond a reasonable doubt that each defendant committed the crimes

with which he or she was charged," that [the jury] must give separate consideration to each

individual defendant and to each separate charge against him," that "[e]ach defendant is entitled

to have his or her case determined from his or her own conduct and from the evidence that may be

applicable to him or to her," and that "opening and closing arguments are not evidence and that

[the jury] should draw no inferences from a defendant's exercise of the right to silence") (citing

*Schaffer v. United States*, 362 U.S. 511, 516 (1960)).

The defendant's arguments do not overcome the "especially strong" preference for joint

trials given that the charges here will require presentation of much the same evidence, testimony,

and defendants all participating in the same illegal acts.  *Wilson*, 605 F.3d at 1016.

**3.  The motion is untimely.**

The deadline for filing a motion to sever pursuant to Rule 12(b)(3)(D) has long since

elapsed.  *See* Consolidated Pretrial Order (ECF No. 133), at ¶ 1.  The defendant does not articulate

any reason why the basis for the alleged severance was not apparent prior to the motions deadline.

The defendant therefore has not shown "good cause," Fed. R. Crim. P. 12(c)(3), why his untimely

motion should be considered.

## Conclusion

For the reasons set forth herein, the United States respectfully requests that this Court deny Defendant Harrelson's motion to sever him from his co-defendants scheduled for trial on September 26, 2022.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:  _____
Troy A. Edwards, Jr.
Assistant United States Attorney
N.Y. Bar No. 5453741
Ahmed M. Baset
Louis Manzo
Jeffrey S. Nestler
Kathryn Rakoczy
Assistant United States Attorneys
U.S. Attorney's Office, District of Columbia
601 D Street NW
Washington, D.C. 20530

_____/s/_____
Alexandra Hughes
Justin Sher
Trial Attorneys
National Security Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20004